Julie N. Nong (SBN 208013)
NT Law Group
2600 W. Olive Ave., 5th Fl., #647
Burbank, CA 91505
Tel: (888) 588-0428
Fax: (888) 588-0427
Email: julie.nong@gmail.com

Attorneys for Plaintiff Anna Kihagi

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA KIHAGI, an individual, <br><br> Plaintiff, <br><br> V. <br><br> CITY OF WEST HOLLYWOOD, CALIFORNIA, a California public facilities corporation; ALLISON REGAN, a natural person; MICHAEL JENKINS, a natural person; JEFFERY JONES, a natural person, and PHILLIP BRANDENBURG, JR. a natural person, and DOES I-10, inclusive, <br><br> Defendants. | CASE 2: 14-cv-00936-PSG (JEMx) <br><br> [Assigned to Hon. Philip S. Gutierrez, District Judge, Ctrm. 880 - Roybal Courthouse, Hon. John E. McDermott, Magistrate, Judge, Ctrm C - LA - Spring Street Courthouse] <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) VIOLATION OF EQUAL PROTECTION, 42 USC § 1983;** <br> **(2) VIOLATION OF SUBSTANTIVE DUE PROCESS, 42 USC § 1983;** <br> **(3) VIOLATION OF FIRST AMENDMENT RIGHT TO PETITION, 42 USC § 1983** |

1

## INTRODUCTION

1.      Plaintiff Anna Kihagi alleges that Defendant, the City of West Hollywood, arbitrarily and maliciously singled her out and enforced the building, property maintenance and construction codes in an unequal and vindictive manner so as to deny her rights under the Equal Protection Clause, Due Process Clause and rights guaranteed by the First Amendment, all in violation of 42 USC § 1983.

2.      Ms. Kihagi is the principal in several limited liability corporations which own apartment houses located in the City that were, in whole or in part, taken off the rental market as permitted under the Ellis Act, Cal. Gov. Code §§ 7060 *et seq.*  The lawsuit alleges that the City acted arbitrarily, capriciously and maliciously in its enforcement actions against Plaintiff in violation of the Equal protection and Due Process Clauses of the United States Constitution.  The wrongful act complained of herein are in retribution of Plaintiff exercising her rights under the Ellis Act and thus violative of Plaintiff's right under the First Amendment to petition government.

3.      Ms. Kihagi is heterosexual female African immigrant.  Plaintiff is informed and believes that the City's unequal and disparate treatment of her is a result of bias on the part of City officials against African female immigrants that are culturally different from the City officials who are largely gay and Caucasian.  Gay, white females and males receive substantially faster and more favourable responses to building permit applications and are not cited for the de minimus code violations alleged below.  Plaintiff alleges that she has been discriminated against and treated differently because she is of African descent and an immigrant.

FIRST AMENDED COMPLAINT

4.     The City and its employees have a visceral opposition to the Ellis Act and as a result have targeted Ms. Kihagi for harassment and attempted to criminally prosecute her for code violations based on arbitrary and capricious interpretations of the City's Municipal Code.  Plaintiff is being treated differently in connection with enforcement actions than other property owners in the City.  The vendetta against Plaintiff is motivated by personal animus, discrimination based on race and by City's bureaucratic hostility to the Ellis Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.

6.     Venue is proper in the United States District Court for the Central District of California as all acts complained of occurred within this District.

7.     Plaintiff, Anna Kihagi, an African-American female, is the managing member of 1263 North Crescent, LLC ("North Crescent") and Aquat 009, LLC, which owns or manages real property located within the City. She was the defendant in a criminal action brought by the Defendant for alleged building and construction violations relative to these properties where all charges were dismissed.

8.     Defendant, City of West Hollywood, California, is a public facilities corporation organized and existing pursuant to the laws of the State of California.

9.     The City is responsible for the acts of its agents and employees, and is responsible for the enforcement of its construction, building and property maintenance codes.  The City has adopted as its policy a hostility towards the Ellis Act and has put into effect ordinances, rules and regulations intended to discourage persons from exercising their rights under the Ellis Act.  All the wrongful acts complained of herein were authorized the City and carried out in furtherance of its unlawful policies.

3

FIRST AMENDED COMPLAINT

10.     Defendant Allison Regan is an individual employed by the City of West Hollywood.  While so employed, she was responsible for carrying out many of the wrongful acts complained of herein, including maintaining criminal and civil actions against Plaintiff in retribution to for the exercise of her rights under the Ellis Act.

11.     Defendant Michael Jenkins is an individual employed by the City of West Hollywood.  While so employed, he was responsible for carrying out many of the wrongful acts complained of herein, including maintaining criminal and civil actions against Plaintiff in retribution to for the exercise of her rights under the Ellis Act.

12.     Defendant Jeffery Jones is an individual employed by the City of West Hollywood.  While so employed, he was responsible for issuing citations to Plaintiff as complained of herein in retribution for the exercise of her rights under the Ellis Act and a personal animus towards Plaintiff.  In addition, Jones delayed the issuance of permits, delayed inspections and took other official action against Plaintiff motivated by a personal animus towards Plaintiff and in retribution for the exercise of her rights under the Ellis Act.

13.     Defendant Phillip Brandenberg, Jr is an individual employed by the City of West Hollywood.  While so employed, he was responsible for issuing citations to Plaintiff as complained of herein in retribution for the exercise of her rights under the Ellis Act and a personal animus towards Plaintiff.  In addition, Jones delayed the issuance of permits, delayed inspections and took other official action against Plaintiff motivated by a personal animus towards Plaintiff and in retribution for the exercise of her rights under the Ellis Act.

14.     Plaintiff is informed and believe and thereon alleges that, at all times mentioned herein, Defendants were agents and/ or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the

4

course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein, and those Defendants named herein as DOES 1 through 10, inclusive, are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

15. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

16. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes on that basis alleges that each of the Defendants designated herein as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein and for the damages suffered by Plaintiff. At such time as Plaintiff learns the true name and capacity of any Defendant named as a DOE herein, Plaintiff will amend her complaint to identify said defendant, and include accompanying charging allegations.

## STATEMENT OF FACTS

17. The population of the City of West Hollywood, according to the most recent census data, is 34,650. The City has a very strict rent control ordinance and a large portion of its residents reside in apartments that rent far below market value. The popular support for rent control within the City by residents that benefit from

5

FIRST AMENDED COMPLAINT

the rent control ordinance is reflected by policies and enforcement actions taken by City officials who enforce the City's municipal code.

18.     The City has adopted ordinances and regulations that are unlawful and inconsistent with the Ellis Act even though the City is aware that its attempt to regulate this area of commerce is pre-empted by State law.  Time and again the City has taken unreasonable positions concerning the proper interpretation of the Ellis Act and attempted to coerce Plaintiff and others to abide by its patently unreasonable interpretation of the Ellis Act.

19.     In response to the enactment of rent control ordinances by cities in California, including West Hollywood, and a California Supreme Court decision holding that landlords do not have the right to evict tenants to go out of the business of being a landlord, the California legislature enacted the Ellis Act.  The Ellis Act provides generally that no local government can compel a rental property owner to continue to offer their housing for rent and allows rental property owners to exit the business and after a period of time to re-enter.  The Ellis Act is lawfully used by property owners to take all or a portion of the units in a building off the market, renovate and then bring the property back onto the market after a proscribed period of time.  The City is so openly and unreasonably hostile to the Ellis Act that it has enforced its ordinances in an arbitrary and capricious manner against Plaintiff in retaliation for Plaintiff availing herself of the privileges afforded under the Ellis Act, on the basis of her race and gender and a personal animus towards Plaintiff.

20.     On July 17, 2008, North Crescent notified the City that it was withdrawing eight units located at 1263 N. Crescent Heights Blvd from the rental market pursuant to West Hollywood Municipal Code ("WHMC") Section 17.52.010(15), also known as the "Ellis Provision."  At the time of the notification, all the units were vacant, the prior tenants having voluntarily vacated their tenancies.

6

FIRST AMENDED COMPLAINT

21.     Pursuant to the Ellis Provision and agreement with the City, the withdrawal of the units became effective July 17, 2009.

22.     Commencing July 17, 2009, the Plaintiff through North Crescent, began renovating 1263 N. Crescent Heights. The appropriate work and building permits were obtained from the City and were displayed as required by law.

23.     On or about January 11, 2010 and continuing thereafter, the City, through its Department of Code Compliance, issued several citations for violations of WHMC §19.30.030(P), Property Maintenance Standards, and WHMC §7.24.010, Standards for Vacant, Abandoned or Undeveloped Property.  These violations were issued notwithstanding that the Crescent Heights property was never abandoned or vacant.

24.     The City singled out Plaintiff for enforcement of a variety alleged code violations in an arbitrary, capricious and vindictive manner.  The City was motivated a personal hostility towards Plaintiff arising from the exercise of her rights under the Ellis Act.

25.     West Hollywood Municipal Code § 19.30.030 (J)(2), for example, makes it a violation to maintain property "with a lack of adequate landscaping or ground cover sufficient to prevent blowing dust or erosion, or allowing the landscaping on private property or in a parkway to cause a hazard or inconvenience to pedestrians using the public sidewalk."

26.     Pursuant to this Code section, Plaintiff has been cited numerous times due to a deviation of about ½ inch between the grass on her property and the top of the sidewalk.  Virtually all the other properties on her block and on adjoining streets have this condition, with many of the properties having much greater deviations. Notwithstanding that deviations of this type are the general rule rather than the exception throughout West Hollywood, Plaintiff and Plaintiff alone has been singled

FIRST AMENDED COMPLAINT

out for enforcement with citations alleging that the condition constitutes a "tripping hazard."

27.    Plaintiff is informed and believes that she is the only property owner within the City of West Hollywood that has received a "tripping hazard" citation based on the general conditions that formed the basis for the tripping hazard violations issued to Plaintiff.  The issuance of tripping hazard citations was motivated by a personal animus towards Plaintiff motivated by her decision to avail herself of her rights under the Ellis Act.

28.    WHMC §19.30.030(P) makes it a code violation when "A violation of any other provision of the Municipal Code or the Building Code that pertains to real property, structures, or which otherwise concerns the public health, safety, and general welfare."

29.    WHMC §7.24.010 applies only to vacant, abandoned or underdeveloped property, and does not apply to property that is undergoing renovation or rehabilitation.

30.    Municipal Code § 7.24.010 provides that in the case of vacant or abandoned buildings, the owner shall maintain such property in "good condition, keeping it cleaned, watered and weeded. Dead or dying plant material shall be removed."  Plaintiff received a notice of violation on the grounds that there existed a brown spot on the corner of her law at the Crescent Heights property.  Similar properties on the street had lawns that were completely un-watered with dead grass. Moreover, properties throughout the City have front yards consisting totally of dead grass and dirt, but are not cited.  Plaintiff alleges that the issuance of the "dry spot on the lawn" citation was issued based on a personal animus towards Plaintiff and was arbitrary and capricious.

31.    Plaintiff alleges that Plaintiff is the only person in the history of the City that has received a citation for the type of condition that existed on her property

8

FIRST AMENDED COMPLAINT

and that she was singled out and targeted due to a personal animus towards her motivated in part by the City's opposition to the Ellis Act and in retribution for Plaintiff availing herself of her rights under the Ellis Act.

32.    All work was completed at North Crescent Heights in early 2012.  In 2012, the City commenced criminal proceedings against the Plaintiff for a number of citations that were issued in prior years but never resolved, many of which are described above.

33.    The citation based on trash accumulating in the back yard, a citation which later became the subject of a criminal action, was based on construction materials being stacked in a paved area for the trash cans are designed to be placed. The area is not visible from the street.  The City does not issue citations for the condition on Plaintiff's property and would not have issued the trash accumulation citation but for its animus towards Plaintiff, discrimination based on race and gender the City's visceral opposition to the Ellis Act and persons who avail themselves of their privileges under the Act.

34.    To resolve the alleged criminal citations based on Code violations, the City and the Plaintiff entered into a deferred prosecution agreement to resolve the criminal citations. The term of the agreement was 18 months and would expire on November 12, 2013.  All charges were ultimately dismissed against Plaintiff.

35.    Just prior to the expiration of the deferred prosecution agreement, the City made an ex parte application to the Court in an attempt to revoke the agreement. The City alleged that the Plaintiff was either engaging in unpermitted construction at other properties, or that the properties were being maintained in violation of the property maintenance code.

36.    The Court denied the City's application for ex parte relief.  The Court further found that Plaintiff had not violated the deferred prosecution agreement.

9

FIRST AMENDED COMPLAINT

The City petitioned the Superior Court to find Plaintiff in violation of the deferred prosecution agreement in bad faith and without cause.

37.    On or about July 18, 2013, the City approved a building permit application for 1231 N. Vista, a property in which the Plaintiff is the managing director.  The approved building permit allowed for minor improvements to the bathrooms and kitchen, replacement of the front door, replacement of closet doors and replacement of water heater enclosure.

38.    On or about July 31, 2013, the property was inspected by Code Compliance Officer Jeffrey Jones.  During his inspection, Mr. Jones alleged that he observed a property maintenance code violation at the 1231 N. Vista property.  Mr. Jones alleged that the N. Vista property's parkway contained a tripping hazard, as well as lack of landscaping and overgrown and dead vegetation all in violation of WHMC property maintenance requirements. He sent a warning notice to the Plaintiff concerning these alleged code violations.

39.    This warning was issued notwithstanding that the same tripping hazards existed at the property that was adjacent to 1231 N. Vista in addition to many, many other properties in the City.

40.    On or about August 13, 2013, Mr. Jones returned to the property and observed that no corrective action had been taken concerning the tripping hazard on the parkway, nor with the removal of the vegetation and plant material.  On or about August 13, 2013, Mr. Jones issued a notice of violation to the Plaintiff concerning the alleged tripping hazard.

41.    On or about August 15, 2013, Mr. Jones inspected real property located at 1220 N. Formosa, a property managed by an LLC in which the Plaintiff is managing director.  On or about August 15, 2013, Mr. Jones issued a citation for a "tripping hazard" on the parkway, and for failure to properly landscape the property. The condition for which the tripping hazard was issued is common to all properties

10

FIRST AMENDED COMPLAINT

throughout the City and Plaintiff was arbitrarily singled out for enforcement.  The City never writes tripping hazard citations based on the condition that existed on the property.  In fact, the no reasonable person would ever characterize the condition as constituting a tripping hazard.  Mr. Jones issued the tripping hazard citation based on his personal animus towards Plaintiff stemming initially from his personal opposition to Ellis Act conversions.  On information and belief, Mr. Jones has never cited another property for maintenance of a tripping hazard based a condition similar to the condition that existed on 1220 North Formosa even though similar conditions are common throughout the City.

42.     Properties that are adjacent to 1220 N. Formosa, for example, have conditions similar to the condition that Mr. Jones alleged a tripping hazard but have never been cited.  The nature of the landscaping violations and trip hazards was that the soil level had to be raised about ¼ inch to the same level as the concrete walkway.

43.     Defendant and City Official Jeffery Jones is responsible for writing citations alleging the tripping conditions complained of herein.  The conditions on the properties that led to the so-called tripping violations were the same conditions that existed on virtually all other properties on the same streets.  The relevant section of the Municipal Code that was violated prohibits unsafe conditions and makes no mention of deviations between the grass line and surrounding cement.  Given the condition on the property for which the citations were issued, no reasonable person could conclude that a public safety hazard existed.  The numerous trip violation citations concern conditions common in the neighborhood yet no other persons have been cited for this condition.

44.     On another occasion in the summer of 2013, Mr. Jones and another inspector, Phillip Branenburg, inspected 1237 N. Orange, a property that is owned by a LLC for which Plaintiff is the managing director. They inspected the interior

FIRST AMENDED COMPLAINT

stairs and hand railings to determine if these items were of the proper size. They also inspected a small set of stairs leading to the parking lot. The exterior rear staircase measures 10 feet by 5 feet. The inspectors individually measured 15 steps to determine if each step, which was required by WHMC to be 7 inches high and 11 inches wide, was in compliance. Two of the stairs did not meet these requirements, and were promptly repaired. They then measured each rail, of which there were over 100, to determine if each rail was 4 inches apart. Four rails did not meet this requirement. These were promptly repaired.  When the Plaintiff made an appointment to have the property re-inspected, neither Mr. Jones nor Mr. Branenburg showed up at the appointed time.

45.     Indeed, the City has time and again cancelled or missed appointment to approve improvements to Plaintiff's properties.  These cancelled and missed appointments were motivated by an animus towards Plaintiff and an intention by the City to make doing business with the City as difficult as possible.  Plaintiff has suffered substantial injury as a result of the City's intentional delays in the form of lost income, increased expenses, additional financing expenses and other economic damages.

46.     Defendant and City Official Phillip Brandenburg time and again delayed and failed to appear for inspections of construction work inspection appointments.  The delays have caused increased construction costs and longer vacancy periods.  On information and belief, these delays and missed appointments are motivated by a personal hostility towards Plaintiff who is being singled out for disparate treatment.    The delays have caused economic injury in the form of increased construction costs and delays in being able to rent my properties.

47.     The alleged stair and stair rail violations that existed on Plaintiff's 1237 North Orange property were *de minimus* and technical.  Violations such as the ones alleged against are never enforced against other property owners in the City.

FIRST AMENDED COMPLAINT

Plaintiff alleges that the only reason that she was cited for the stair and stair rail violations are that Mr. Jones and Mr. Brandenburg have a personal animus towards Plaintiff stemming from their hostility to Ellis Act conversions and their prior dealings with Plaintiff.  Mr. Jones and Mr. Branenburg would not have cited any other similarly situated person or property for these violations.  They would not have cited Plaintiff if it were not for Plaintiff being an immigrant of African descent and their personal animus and resentment towards her.

48.    The requirement that permits be obtained for work on dwellings has been unevenly enforced against Plaintiff.  Jeffrey Jones has issued citations for work without a permit while at the same time not requiring permits for work on adjacent properties.  In one case, a worker was taking down outdoor fixtures providing shade to windows.  Plaintiff has witnessed similar work on an adjacent property and the City has not required a construction permit.  This type work is routinely considered de minimus by the City and no permits are required.  Plaintiff alleges on information and belief that Jones and the City have a vendetta against Plaintiff and have enforced the permit requirement in an arbitrary and disparate manner.

49.    At the first sentencing hearing on revocation of the deferred sentencing agreement in the fall of 2013, the Defendant attempted to use the incidents described above as a basis for revocation of the agreement and to have the Plaintiff sentenced for violating the deferred sentencing agreement.

50.    The state court rejected the City's argument and found that the nature of the work and the type of workers that needed to be involved showed that Plaintiff's efforts were diligent and reasonable.  The City's attempt to revoke the deferred sentencing agreement was motivated by discrimination based on race and gender and a personal animus towards Plaintiff.  The City's actions were malicious, arbitrary and capricious.

13

FIRST AMENDED COMPLAINT

51.    Moreover, at the hearing initiated by the City to revoke the deferred sentencing agreement, the Court found against the City.  The state court found that the Plaintiff's efforts were diligent and reasonable and rejected the City's position that Plaintiff should be jailed.  The Court found that the Plaintiff had complied with the Building Code by obtaining the proper building permits, thus vindicating the Plaintiff's position.  The City acted maliciously and without probable cause in initiating the hearing where they sought to revoke the deferred sentencing agreement.  The state court further found that the City acted unreasonably in failing to show up for appointments to approve work that had been performed.  Plaintiff alleges that the City has a practice and pattern of delaying construction on Plaintiff's properties solely due to personal animus vindictiveness towards Plaintiff.

52.    In 2013, an attorney representing the City approached tenants at the Crescent Heights building, Diana Dominguez and Logan Yuzna, and told the tenants that they could obtain a rent reduction if they made a complaint.  In fact, there were no grounds for the tenants to receive a rent reduction and the attorney representing the City was aware of the fact.  After the complaint was filed, an internal hearing was scheduled and the complaining tenants recruited by the City failed to show up.  The Administrative Law Judge presiding at the hearing dismissed the complaint and stated on the record that: "No one would have believed testimony of the tenants that they were tenants."

53.    The actions taken by the attorney for the City were done with the knowledge and ratification of the City and motivated by a personal animus towards Plaintiff and were malicious.  As a result of the City's misconduct, Plaintiff incurred attorney fees and other damages.

54.    In another matter, *City of West Hollywood v. Anna Kihagi* (*City v. Kihagi I*), Los Angeles Superior Court Case No. SC100932, the City filed a civil action.  Unable to prove its case, the City and Plaintiff entered into a settlement

14

FIRST AMENDED COMPLAINT

agreement whereby Plaintiff would pay nothing, provided there were no further Ellis Act violations.  If any further violations did occur, Plaintiff would pay $10,000.  The trial court retained jurisdiction to enforce the settlement.  In 2012, the City sought to find Plaintiff in violation of the Ellis Act and to find her in violation of the settlement agreement.  On appeal, the Court of Appeal found that the City's proffered interpretation of the settlement agreement and the Ellis Act was patently unreasonable and reversed, holding that the City had not presented any evidence the Plaintiff violated the Ellis Act and that its construction of the Ellis Act and settlement agreement was unreasonable.

55.    The prosecution of Case No. SC100932 was vindictive and discriminatory from the outset.  The underlying alleged violations were without merit and never would have been prosecuted if it were not for the City's animus towards Plaintiff and the City's determination to retaliate against Plaintiff for exercising her rights under the Ellis Act.

56.    As other evidence of the City maliciously singling out Plaintiff are the events in the hearings associated with *People v. Kihagi*, Case No. 1BV01333.  Plaintiff prevailed in this action and did suffer a criminal conviction.  In that case, the City alleged as criminal various code violations regarding the upkeep of her properties.  The code violations alleged against her involved conditions on her property that were common to all properties in the neighborhood although no other property owners received code citations, much less criminal prosecution.  The code violations that morphed into criminal prosecution included the following:

          a. Violation of Municipal Code § 7.24.010 provides the owner shall maintain such property in "good condition, keeping it cleaned, watered and weeded. Dead or dying plant material shall be removed."  Plaintiff received a violation for having a brown spot

15

FIRST AMENDED COMPLAINT

on her lawn when other properties on the street had completely dry grass;

b. Municipal Code § 19.30.030 (J)(2) makes it a violation to maintain property "with a lack of adequate landscaping or ground cover sufficient to prevent blowing dust or erosion, or allowing the landscaping on private property or in a parkway to cause a hazard or inconvenience to pedestrians using the public sidewalk."  Pursuant to this section, Plaintiff was charged with having a lawn with about a ¼ deviation from the sidewalk. Plaintiff received a violation became the subject of criminal prosecution although literally all other properties in the neighborhood have deviations between the level of the grass and sidewalk exceeding ¼ inch and have never received a citation. The prosecution for this offense was vindictive, selective and made in retribution for Plaintiff exercising her rights under the Ellis Act.

c. Municipal Code § 7.24.010(e) requires property owners to "[s]ecure, lock and close all buildings and structures upon the property, place or area in accordance with presently applicable FHA-standards, subject to the approval of the Building Official. Pursuant to this section, Plaintiff was criminally prosecuted for a violation that a window on the Crescent Heights property was left open ¼ inch, despite the fact that the ordinance applies to vacant buildings and Plaintiff's property was not vacant. Moreover, application to this ordinance to a window open ¼ inch is arbitrary and capricious and makes no sense.  Plaintiff was singled out for prosecution due to personal animus towards

16

FIRST AMENDED COMPLAINT

Plaintiff and as retribution for exercising her rights under the Ellis Act.

d. Municipal Code § 7.24.010(c) requires the owner of a vacant building to "[s]ubmit a "Letter of Agency" to the West Hollywood Sheriff's Station every thirty days and post "No Trespassing" signs as required so that members of the Sheriff's Department are empowered to remove all unauthorized persons from the property. The "letter of agency" is a letter informing the Sheriff's Department of the person responsible for the property. The statute is arbitrary and designed to harass Ellis Act properties to the extent that it requires a new letter every 30 days even if there has been no change in the responsible party. Plaintiff was subject to criminal prosecution for violation of the ordinance. The prosecution was selective in the sense that no other person in the history of the City has been criminally prosecuted for violating this provision of the ordinance.

e. The City also sought to further prosecute Plaintiff for a myriad of other technical violations in a selective and vindictive manner motivated by a personal animus towards Plaintiff and in retaliation for exercising her rights under the Ellis Act.

f. In this criminal prosecution, Plaintiff entered into an agreement that the allegations would not be pursued provide no further violations occurred, provided that the City first give notice of any alleged violations and an opportunity to cure. The City unsuccessfully sought to pursue the prosecution and sentencing on the initial allegations based on code violations that occurred after the criminal prosecution was initiated. The state court

17

FIRST AMENDED COMPLAINT

judge rejected the City's attempt to use the subsequent violations to trigger prosecution of the initial violations on the grounds that the City had not provided notice to Plaintiff's attorney in the criminal case.  The failure to provide Plaintiff's attorney notice and opportunity to cure the subsequent violations was calculated and intended to deprive Plaintiff the opportunity to cure the alleged subsequent violations.

57.    The misconduct complained of herein is ongoing.  In another civil action, *Sheehe v. Kihagi*, Case SC 119079 ("the *Sheehe* action"), the City incited a former tenant to bring a meritless action against Plaintiff and then the City intervened to advocate patently unreasonable and unlawful positions against Plaintiff.  The City's unlawful conduct is motivated by a personal animus towards Plaintiff and hostility towards the Ellis Act.  The City's conduct in the *Sheehe* matter is ongoing and continuing.  Plaintiff will seek leave to amend when the facts and extent of the Defendants conduct become better known.

58.    In *Sheehe*, the City located a former tenant and encouraged and urged that he file a meritless action against Plaintiff for failing to offer to re-rent a unit formerly occupied by him.  The tenant's lawsuit was encouraged and directed by Allison Regan and the City, even though it is without merit.  It is on the third amended complaint, which is presently the subject of a demurrer because the action is barred by the statute of limitations.

59.    After encouraging and directing Sheehe to file a meritless action, the City under the direction of Allison Regan intervened in the lawsuit and sought to expand the its scope.  Regan and the City orchestrated the *Sheehe* action by soliciting Sheehe and all along planned to expand the scope of the lawsuit to pursue the position that the court of appeal rejected in *City v. Kihagi I*.  In *Sheehe*, the City urged took the same "absurd" position that was earlier rejected by the court of

FIRST AMENDED COMPLAINT

appeal.  When the trial court issued an ambiguous oral ruling, the City, in bad faith, submitted to the trial court a Notice of Ruling that enjoined Crescent and myself from renting or leasing certain units unless first complying with the Ellis Act.  These were the same units that the court of appeal earlier found were outside the scope of the Ellis Act restrictions.

60.    In the *Sheehe* action, the City attempted to place Ellis Act rent control restrictions on units even though the court of appeal squarely held that the specific units were not subject to the Ellis Act rent control restrictions.  The non-conforming Notice of Ruling is that it sought to bring within the scope of Ellis Act restrictions the same units that were found not to be subject to Ellis Act restrictions in an earlier court of appeal opinion.  The City and Allison Regan are presently prosecuting the Sheehe action premised on the precise same position that was found to be "absurd" in *WH v. Kihagi I.*

61.    In *Sheehe*, Plaintiff was forced to incur attorney fees to file an appeal of the intentionally misleading Notice of Ruling and then to seek a stay via a writ of supersedeas and application for temporary stay.   On December 4, 2014, the court of appeal granted the writ and stayed all proceedings in *Sheehe*.  The proceedings in the court of appeal involve the City prosecuting the same position that was found to be "absurd" in *WH v. Kihagi I.*

62.    The City has recently pursued criminal charged against Plaintiff violation of West Hollywood Municipal Code § 17.52.090.  Section 17.52.090 makes it a criminal offense to have "caused, permitted, aided, abetted, or suffered the harassment of a tenant in a manner that was likely to create a hostile living environment or cause a reasonable tenant similarly situated to vacate the rental housing unit."  There is no allegation that a tenant vacated a unit due to any unlawful acts of Plaintiff and the statute unconstitutional on its face.  First, it is unconstitutionally vague in the use of the term "harassment . . . likely to create a

FIRST AMENDED COMPLAINT

hostile living environment." *Baba v. Board of Sup'rs of San Francisco*, 124 Cal. App. 4th 504, 506 (Statute making a criminal offense to threaten to evict of recover possession in connection with Ellis Act conversion held unconstitutional). In *Baba*, the California Court of Appeal held that an ordinance substantially similar to § 17.52.090 is unconstitutional on its face. It makes criminal it a criminal offense to have "permitted . . . conditions likely to create a hostile living condition." Second, the statute impermissibly makes unlawful speech protected by the First Amendment. The prosecution of this criminal action was done at the direction of defendant Allison Regan maliciously and motivated by a personal animus towards Plaintiff.

63.    On information and belief, Regan, either directly or indirectly through others, solicited tenants and encouraged them to embellish or fabricate stories to the effect that Plaintiff created a "hostile living condition" for the purpose of bring criminal charges. This criminal case was orchestrated by Regan who encouraged and persuaded witnesses to give embellished and misleading statements.

64.    The City and Allison Regan have recently initiated yet another civil proceeding to collect fines and assessments in connection with the citations complained of herein. The liability for these citations was resolved in an earlier settlement of a civil action. This latest civil action is brought maliciously and without cause to believe that Plaintiff is responsible for payment. Furthermore, the liability on the citations is barred by the statute of limitations. Lastly, the fines associated with the citations are collectible only against the property and not Plaintiff as Plaintiff does not own any of the properties in question. This civil action is brought maliciously and without cause and the City and Regan know it.

COUNT I

(Violation of Equal Protection, 42 USC § 1983)

(Against All Defendants)

20

FIRST AMENDED COMPLAINT

65.     Plaintiff incorporates by reference all the preceding paragraphs as full set forth herein.

66.     Plaintiff alleges that the Defendants have enforced building codes and other relevant laws in an arbitrary, capricious and discriminatory manner as more specifically alleged herein.  The Defendants have enforced the City's laws in a uniquely discriminatory fashion against Plaintiff motivated by a personal animus towards Plaintiff and the fact that she is of African descent and in part by a bureaucratic hostility towards the Ellis Act.

67.     As a result of the City's unequal enforcement of its laws and personal vendetta, Plaintiff has been suffered damages in delay in completing her Ellis Act conversion, incurring attorney fees and having habitable structures held off the market.  She has also incurred attorney fees in defending criminal proceeding initiated maliciously and suffered extreme emotional distress.

68.     Plaintiffs have also selectively prosecuted civil and criminal actions as more fully above.  The ordinances that Defendants seek to enforce are unconstitutionally vague on their face.  Plaintiff has targeted for disparate treatment in that similarly situated persons are not prosecuted or cited for the violations and charges described above based on the conduct alleged against Plaintiff.

COUNT II

(Violation of Substantive Due Process, 42 USC § 1983)

(Against All Defendants)

69.     Plaintiff incorporates by reference all the preceding paragraphs as full set forth herein.

70.     Plaintiff alleges that City and other Defendants have enforced building codes and City ordinances and other relevant laws in an arbitrary, capricious and

21

discriminatory manner as more specifically alleged herein, which has denied Plaintiff's right to substantive due process, i.e., to be free of arbitrary capricious enforcement actions by the City.

71.    As a result of the Defendants unequal and arbitrary and capricious enforcement of its laws and personal vendetta, Plaintiff has been suffered damages in delay in completing her Ellis Act conversion, incurring attorney fees and having habitable structures held off the market.  She has also incurred attorney fees in defending criminal and civil proceedings initiated maliciously and suffered extreme emotional distress.

COUNT III

(Violation of First Amendment Rights, 42 USC § 1983)

(Against All Defendants)

72.    Plaintiff incorporates by reference all the preceding paragraphs as full set forth herein.

73.    The First Amendment states: "Congress shall make no law respecting ... the right of the people . . . to petition the Government for a redress of grievances." Included within Plaintiff's rights is her right to pursue her rights under the Ellis Act and pursuit of those rights is a constitutionally protected activity.

74.    In retaliation for Plaintiff exercising her rights under the Ellis Act and the City's vehement opposition to the Ellis Act, the City and the other Defendants have retaliated against Plaintiff by enforcing ordinances and other regulations in an arbitrary, capricious manner as alleged herein.  In so doing, the Defendants have chilled and discouraged Plaintiff from exercising her rights under the Ellis Act.

75.    As a result of the City's and other Defendant's arbitrary, capricious and vindictive enforcement actions against Plaintiff, Plaintiff has suffered injury.

22

Renovation on of her apartment buildings has been delayed and the properties have experienced long periods of vacancy and diminished rental income as a result of the City's wrongful conduct as alleged herein.  Plaintiff has suffered due to missed opportunities to sell and refinance her properties as a result of the City's wrongful conduct.

76.    The City has also attempted to enforce an unconstitutional ordinance that makes it criminal to cause or even permit a "hostile living environment," as more specifically alleged above.  This ordinance is not only unconstitutionally vague, it also proscribes constitutionality protected speech.

## RELIEF SOUGHT AS TO ALL COUNTS

WHEREFORE, Plaintiff prays that the Court award her the following relief:

1.  For an award of attorney fees pursuant to 42 USC § 1983;
2.  For general and special damages according to proof;
3.  For punitive damages against the City and its defendant officials sufficient to deter the unlawful conduct alleged herein;
4.  For costs of suit herein; and
5.  For such other relief as the Court deems proper

Dated: December 8, 2014

NT LAW GROUP

/s/ Julie N. Nong

_____

Julie N. Nong

Attorney for plaintiff

23

FIRST AMENDED COMPLAINT