Julie N. Nong (SBN 208013)
NT Law Group
2600 W. Olive Ave., 5th Fl., #647
Burbank, CA 91505
Tel: (888) 588-0428
Fax: (888) 588-0427
Email: julienong@ntlawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANNA KIHAGI, an individual, a limited liability company, AQUAT 009, LLC, a limited liability company, and JAMBAX 2, LLC, a limited liability company,

   Plaintiffs,

   v.

CITY OF WEST HOLLYWOOD, CALIFORNIA, a California public facilities corporation; ALLISON REGAN, a natural person; JEFFERY JONES, a natural person, and PHILLIP BRANDENBURG, JR. a natural person, and DOES I-10, inclusive,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE 2: 14-cv-00936-PSG (JEMx)

[Assigned to Hon. Philip S. Gutierrez, District Judge, Ctrm. 880 - Roybal Courthouse, Hon. John E. McDermott, Magistrate, Judge, Ctrm C - LA - Spring Street Courthouse]

**FOURTH AMENDED COMPLAINT FOR:**

 **(1) VIOLATION OF EQUAL PROTECTION, 42 USC § 1983;**

**DEMAND FOR JURY**

1

FOURTH AMENDED COMPLAINT

**INTRODUCTION**

1.      Plaintiff Anna Kihagi is a manager of various limited liability companies that are Plaintiffs herein and described below.  Theses limited liability companies own residential rental units in West Hollywood.  Kihagi alleges that the Defendants, the City of West Hollywood and various City officials,  abused their power and arbitrarily, deliberately and maliciously singled her out in the enforcement of  building, property maintenance, construction and other ordinances in an unequal and vindictive manner so as to deny her rights under the Equal Protection Clause, in violation of 42 USC § 1983.

2.      The individuals named herein are being sued for their personal actions carried out under the color of law and not solely because of their official capacity.

3.      In one instance, under the guise of the City's Rent Stabilization Act ("RSO"), codified as West Hollywood Municipal Code ("WHMC") § 17.52.090, the City filed a criminal complaint against Kihagi alleging that she created a "hostile living environment."  The state court granted Kihagi's motion to dismiss on the grounds that the ordinance was unconstitutionally vague and unconstitutionally restricted speech protected by the First Amendment.

4.      The City would not have pursued this criminal action but for its personal animus towards Plaintiffs and its hostility to the Ellis Act.  Plaintiffs were singled out for disparate and unequal treatment.  Plaintiffs are informed and believes that they are the only persons in the history of the City to be charged with a violation of this unconstitutional statute.  The decision to prosecute this criminal action was made by defendants Alison Regan and Michael Jenkins in the role as representatives of the City with final decision making authority in filing civil and criminal actions in the name of the City.

5.       The City also prosecuted her under WHMC § 17.28.010(b) for failure to reregister a rental unit, namely 1265 N. Crescent Boulevard, without any basis

2

1    while knowing that the City already had the registration within its possession, and

2    which cause of action was dismissed after the trial court dismissed the charges

3    pursuant to WHMC § 17.52.090.  The City also charged Kihagi for failure to

4    reregister the 1235 N. Vista Street rental unit even though the LLCs that Kihagi

5    managed no longer owned the building as of the date of the filing of the criminal

6    complaint and that the City was aware that the new owner had reregistered the unit.

7         6.    Ms. Kihagi is the principal manager in several limited liability

8    corporations which own apartment houses located in the City that were, in whole or

9    in part, taken off the rental market as permitted under the Ellis Act, Cal. Gov. Code

10   §§ 7060 *et seq*.  This action alleges that the City abused its power and acted

11   arbitrarily, capriciously and maliciously in its enforcement actions against Plaintiffs

12   by proclaiming its policy statement adopted by the City council of its visceral

13   opposition to the Ellis Act.  In so doing, it has violates the Equal Protection Clause

14   of the United States Constitution by treating persons who avail themselves of their

15   rights under the Ellis Act unequally in connection with the enforcement of the City's

16   municipal code.  The wrongful acts complained of herein are in retribution of

17   Plaintiffs exercising their rights under the Ellis Act and thus violative of Plaintiffs'

18   rights under the Equal Protection Clause.

19        7.    Ms. Kihagi is heterosexual female African immigrant.  Plaintiffs are

20   informed and believes that the City's unequal and disparate treatment of her is

21   partially the result of bias on the part of City officials Plaintiffs.  Plaintiffs allege

22   they have been discriminated against and treated differently.  Moreover, irrespective

23   of the Defendants' motives, Plaintiffs have been singled out for disparate treatment

24   and her right to equal protection thus violated.

25        8.    The City and its employees have a visceral opposition to the Ellis Act

26   and as a result have targeted Ms. Kihagi for harassment and attempted to criminally

27   prosecute her for code violations based on arbitrary and capricious interpretations of

28

3

FOURTH AMENDED COMPLAINT

the City's Municipal Code.  Plaintiffs have faced criminal prosecution under at least one City Ordinance that the state court held was facially unconstitutionally vague and unconstitutionally infringed on the First Amendment rights of Kihagi and others.  Plaintiffs are being treated differently in connection with enforcement actions than other property owners in the City.  The vendetta against Plaintiffs is motivated by personal animus, discrimination and by City's bureaucratic hostility to the Ellis Act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.

10.      Venue is proper in the United States District Court for the Central District of California as all acts complained of occurred within this District.

11.      Plaintiff, Anna Kihagi, an African-American female, was and is the managing member of 1263 North Crescent, LLC ("North Crescent"), Jambax 2, LLC ("Jambax") and Aquat 009, LLC ("Aquat") (collectively "Kihagi, "Plaintiff," or "Plaintiffs") which own or manage real property located within the City.  She was the defendant in a criminal action brought by the Defendant for alleged building and construction violations relative to these properties where all charges were dismissed. 1263 North Crescent, LLC purchased the property with an address known as 1263-1267 N. Crescent Boulevard, West Hollywood in 2005.  Prior to removal the building from the rental market in 2008, there was no problem with the City. However, all the problems and harassment only came after Kihagi exercised her rights under the Ellis Act.

12.      Plaintiff Aquat 009 LLC ("Aquat") is and at all times mentioned in this complaint was a limited liability corporation organized and existing under the laws

4

FOURTH AMENDED COMPLAINT

of California.  Aquat is controlled by Kihagi and acquired an ownership interest in 1220 N Formosa West Hollywood CA 90069 on or about December 8 2004.

13.    Plaintiff Jambax 2 LLC ("Jambax") is and at all times mentioned in this complaint was a limited liability corporation organized and existing under the laws of California and is controlled by Kihagi.  Jambax 2 LLC acquired an ownership interest in 12315 Vista Street on or about June 5 2013.

14.    Defendant, City of West Hollywood, California, is a public facilities corporation organized and existing pursuant to the laws of the State of California.

15.    The City is responsible for the acts of its agents and employees, and is responsible for the enforcement of its construction, building and property maintenance codes.  Due to an aging housing stock and the needs of affordable rental housing, the City has adopted as its long standing policy a hostility towards the Ellis Act by proclaiming on its website and adopted by the City Council that its policy statement and primary strategic goal is to "eliminate, or weaken, the Ellis Act" and supporting any and all "legislation to eliminate, or weaken, the Ellis Act" and has put into effect ordinances, rules and regulations intended to discourage persons from exercising their rights under the Ellis Act.  Specifically, the City enacted WHMC §17.52.030 requiring that just cause must be dominant motive for eviction pursuant to the Ellis Act, whereas the Ellis Act does not have such a requirement.   The City also adopted languages under WHMC §17.52.010(15) (c) to prolong the time within which a tenant and the City may commence a civil action against property owners.  All the wrongful acts complained of herein were authorized by the City and carried out in furtherance of its unlawful policies.

16.    Defendant Alison Regan is an individual employed by the City of West Hollywood. She is the City's attorney responsible for determining all civil actions brought against Defendants and she responds and/or act in concert with Michael Jenkins and answers to the City Manager.  While so employed, she was responsible

5

for carrying out many of the wrongful acts complained of herein, including maintaining  civil actions against Plaintiffs in retribution to for the exercise of their rights under the Ellis Act and a personal animus towards Plaintiffs.

17.    Regan is not being sued herein solely because she is an employee or City Official.  She is named herein due to her personal acts in connection with investigating and deciding to file civil actions against Plaintiffs inasmuch as these civil actions were motivated by a personal vendetta against Plaintiffs.  Reagan had in many instances the final decision making authority in deciding whether to pursue the civil actions complained of herein.  In so acting, she singled out Plaintiffs for disparate and unequal treatment.

18.    Alison Regan the City's attorney responsible for determining whether to file all civil actions brought against Defendants and she responds and/or acts in concert with Michael Jenkins, the City Attorney.  While so employed, she was responsible for carrying out many of the wrongful acts complained of herein, including decisions to prosecute the civil actions referred to herein against Plaintiffs in retribution to for the exercise of their rights under the Ellis Act and a personal animus towards Plaintiffs.

19.    Regan has an official policy making role with the City in that she has the discretion and final say when to file civil and other enforcement actions on the City's behalf.  Regan acted as a policy maker in connection with deciding to file the civil actions complained of herein.

20.    Michael Jenkins is an individual employed by the City of West Hollywood as the City Attorney.  He is the City's attorney responsible for determining all civil actions brought against Defendants.  Michael Jenkins is the appointed City Attorney and the chief legal officer of the City.  He implements the vision, broad policy goals and ongoing strategic programs of the City Council and ensures that City operations remain true to and consistent with the Mission

6

FOURTH AMENDED COMPLAINT

Statement and Core Values of the City.  City Attorney duties include provision of legal advice to the City Council and City staff; supervision of all matters of legal significance; preparation of legal opinions; review and drafting of ordinances, resolutions, contracts and program guidelines; and defense of challenges to City actions, laws, policies and procedures. While so employed, he was responsible for carrying out many of the wrongful acts complained of herein, including maintaining civil actions against Plaintiffs in retribution for the exercise of their rights under the Ellis Act and a personal animus towards Plaintiffs.  Jenkins and Alison Regan had final decision making authority as to whether to file the civil actions complained of herein, all in the name of the City.

21.    Michael Jenkins occupies a policymaking role.  He acts on behalf of the City in deciding, either by himself or in conjunction with other attorneys, whether to file civil actions.  In his policy making role and as a representative of the City, he made decisions to file and prosecute the civil actions against Plaintiffs herein.

22.    Jenkins has an official policy making role with the City in that he has the discretion when to file civil and other enforcement actions on the City's behalf. Jenkins acted as a policy maker in connection with deciding to file the civil actions complained of herein and it that capacity acted on behalf of the City.

23.    Defendant Jeffery Jones is an individual employed by the City of West Hollywood.  While so employed, he was responsible for issuing citations to Plaintiff as complained of herein in retribution for the exercise of her rights under the Ellis Act and a personal animus towards Plaintiffs.  In addition, Jones delayed the issuance of permits, delayed inspections and took other official action against Plaintiffs motivated by a personal animus towards Plaintiffs and in retribution for the exercise of their rights under the Ellis Act.

24.    Jones is not being sued solely due to his official capacity, but rather for his actions in carrying out a personal vendetta against Plaintiffs in issuing violations

7

FOURTH AMENDED COMPLAINT

for alleged code violations as complained of herein.  Jones singled out Plaintiffs and charged them with code violations that would never have been charged to other persons.  Jones, acting under color of law, singled out Plaintiffs for unequal and disparate treatment due to a personal animus and in retribution for Plaintiffs exercising their rights under the Ellis Act.

25.    Defendant Phillip Brandenberg, Jr. is an individual employed by the City of West Hollywood.  While so employed, he was responsible for issuing citations to Plaintiffs as complained of herein in retribution for the exercise of their rights under the Ellis Act and a personal animus towards Plaintiffs.  In addition, Jones delayed the issuance of permits, delayed inspections and took other official action against Plaintiff motivated by a personal animus towards Plaintiffs and in retribution for the exercise of their rights under the Ellis Act.

26.    Brandenberg is not being sued solely due to his official capacity, but rather for his actions in carrying out a personal vendetta against Plaintiffs in issuing violations for alleged code violations as complained of herein.  Brandenberg singled out Plaintiffs and charged them with code violations that would never have been charged to other persons.  Brandenberg, acting under color of law, singled out Plaintiffs for unequal and disparate treatment due to a personal animus and in retribution for Plaintiffs exercising their rights under the Ellis Act.

27.    Plaintiffs are informed and believe and thereon allege that, at all times mentioned herein, Defendants were agents and/ or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein, and those Defendants named herein as DOES 1 through 10, inclusive,

8

FOURTH AMENDED COMPLAINT

are jointly and severally liable to Plaintiffs for the damages and harm sustained as a result of their wrongful conduct.

28.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

29.     Each and every individual Defendant named in this complaint is being sued in individual capacities for the acts they are personally responsible for acting under color of law.  They and not solely due to their official capacities.

30.     The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed and believe on that basis allege that each of the Defendants designated herein as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein and for the damages suffered by Plaintiffs.  At such time as Plaintiffs learn the true name and capacity of any Defendant named as a DOE herein, Plaintiffs will amend her complaint to identify said defendant, and include accompanying charging allegations.

**STATEMENT OF FACTS**

31.     The population of the City of West Hollywood, according to the most recent census data, is 34,650.  The City has a very strict rent control ordinance and a large portion of its residents reside in apartments that rent far below market value. The popular support for rent control within the City by residents that benefit from

9

FOURTH AMENDED COMPLAINT

the rent control ordinance is reflected by policies and enforcement actions taken by City officials who enforce the City's municipal code.

32.    Due to an aging housing stock and the needs of affordable rental housing to low income residents, the City has adopted as its long standing policy a hostility towards the Ellis Act by proclaiming on its website that its policy statement and primary strategic goal is to "eliminate, or weaken, the Ellis Act" and supporting any and all "legislation to eliminate, or weaken, the Ellis Act".  As a result, it has put into effect ordinances, rules and regulations intended to discourage persons from exercising their rights under the Ellis Act.  Specifically, the City enacted WHMC §17.52.030 requiring that just cause must be dominant motive for eviction pursuant to the Ellis Act, whereas the Ellis Act does not have such a requirement.  The City also adopted languages under WHMC §17.52.010(15) (c) to prolong the time within which a tenant and the City may commence a civil action against property owners.

33.    The ordinances and regulations adopted by the City are unlawful and inconsistent with the Ellis Act even though the City is aware that its attempt to regulate this area of commerce is pre-empted by State law.  Time and again the City has taken unreasonable positions concerning the proper interpretation of the Ellis Act and attempted to coerce Plaintiffs and others to abide by its patently unreasonable interpretation of the Ellis Act.

34.    In response to the enactment of rent control ordinances by cities in California, including West Hollywood, and a California Supreme Court decision holding that landlords do not have the right to evict tenants to go out of the business of being a landlord, the California legislature enacted the Ellis Act.  The Ellis Act provides generally that no local government can compel a rental property owner to continue to offer their housing for rent and allows rental property owners to exit the business and after a period of time to re-enter.  The Ellis Act is lawfully used by property owners to take all or a portion of the units in a building off the market,

renovate and then bring the property back onto the market after a proscribed period of time.  Because of the City's  openly and unreasonably hostile policy to the Ellis Act proclaimed as its mantra, it has enforced its ordinances in an arbitrary and capricious manner against Plaintiffs in retaliation for Plaintiff availing themselves of the privileges afforded under the Ellis Act, on the basis of a personal animus towards Plaintiffs, and no one else.

35.    On July 17, 2008, 1263 N. Crescent, LLC notified the City that it was withdrawing eight units located at 1263-1267 N. Crescent Heights Blvd from the rental market pursuant to West Hollywood Municipal Code ("WHMC") Section 17.52.010(15), also known as the "Ellis Provision."  At the time of the notification, four units out of eight were vacant, the prior tenants having voluntarily vacated their tenancies.

36.    Soon after the notification to Ellis the building, in an effort to delay, frustrate and thwart Kihagi's rights to remove 1263-1267 N. Crescent from the rental market, Alison Regan encouraged Moshe Straz, a contractor who had performed work for Kihagi, to file a false claim that he was a tenant living in unit 1263 ½ of N. Crescent against Kihagi so that he could receive relocation fees of $17,000.  Alison Regan directed the preparation of Straz declaration for use in support of an ex parte application for a temporary restraining order (City of West Hollywood v. Kihagi, 1253 North Crescent, LASC Case No. 100392), which was granted on October 30, 2008.  By November 7, 2008, Straz retracted his misstatements and claims against Kihagi.  However, by this time, Regan was able to force Kihagi to reach an agreement by giving four additional tenants an additional 90 days to eight months from November 14, 2008 to vacate their units.  The parties agreed that the court would retain jurisdiction for purposes of enforcement settlement.

FOURTH AMENDED COMPLAINT

37.    Plaintiffs are informed and believe that at all times relevant, Michael Jenkins acted in concert with Alison Regan in filing a frivolous ex-parte application for preliminary injunction in an effort to delay Plaintiffs' right to Ellis the building. Jenkins and Regan acted on behalf of the City and had the final decision making authority to do so.

38.    Pursuant to the Ellis Provision and agreement with the City, the withdrawal of all units became effective November 14, 2008, except unit 1267, which has a date of withdrawal of July 18, 2009 because the occupying tenant at this unit qualified for a one-year extension under Government Code Section 7060.4(b). The City filed and recorded with the Los Angeles County Recorder's Office two separate notices of restrictions:  1) Notice of Restrictions to Owners and Successors (Ellis Act) 1263-1267 Crescent Heights Blvd., West Hollywood, CA notifying owners the date of withdrawal of November 14, 2008; 2) Notice of Restrictions to Owners and Successors in Interest (Ellis Act) 1263-1267 Crescent Heights Blvd., *Unit 1267*, West Hollywood, CA notifying owners the date of withdrawal of July 18, 2009.  The Ellis Act follows the 2/5/10 year reintroduction scheme where the earlier a property owner return a property to the market, the more severe penalties in term of monetary damages she would have to pay.  As such, the date of withdrawal is a very critical date because it triggers the time within which an owner may return a property to the rental market, as well as the time a statute of limitation starts to run.

39.    While knowing that the effective date of withdrawal for all units, except Unit 1267, has a date of withdrawal of November, Regan continued to intentionally represent to the courts and papers filed where a lawsuit was instituted against Kihagi that the date of withdrawal is July 18, 2009.  This deliberate misrepresentation allowed her to coax another tenant in unit 1265 ½ to initiate another rent reduction hearing even though more than five years have passed since

that unit was withdrawn from the rental market.  Regan's zealous efforts to harass and make Kihagi's life difficult and unbearable in promulgating the city policy to eliminate the Ellis Act did not stop with coaching Straz to make false claim but she continued to deliberately make false misrepresentations to tenants and the courts and other venues in light of the City's own documents.  Her conduct cannot be said to be based on any rational basis and went beyond what a reasonable person would do due to her vendetta and hatred against Kihagi for invoking the Ellis Act in promulgating the City's objective to weaken the Ellis Act by single Kihagi out and thereby indirectly discouraging anyone else from exercising his/her rights.  In carrying out these acts, Regan was representing the City with final decision making authority.

40.    In another example showing the City's effort to circumvent the Ellis Act, the parties stipulated to a specific judgment to which the City would be entitled in the event of a breach of the Agreement by Kihagi in the *Kihagi I* matter.  (Crescent is also a party to the Kihagi I action and a party to the settlement.)  Nevertheless, in conjunction with its motion for enforcement, Regan initially submitted a proposed judgment that was not the judgment to which the parties stipulated.  Regan tried to wrongfully obtain the addition of the following substantive matter to the judgment:  "Appellants, their agents, representatives, successors, assigns, and all those acting in concert with them are permanently enjoined from the following:  1.  Renting, or offering for rent, including advertising the units, the remaining vacant units at the property until after July 18, 2019."  This provision was not included in the original stipulated judgment because the Parties never agreed to it.  This item underscores how the City sought to read into the Agreement a term that simply did not exist and was contrary to the Ellis Act.  This deceptive act was done in the name of the City and motivated by a personal animus and vendetta against Kihagi and Crescent.

13

FOURTH AMENDED COMPLAINT

41.    Commencing July 17, 2009, Crescent began renovating 1263 N. Crescent Heights.  The appropriate work and building permits were obtained from the City and were displayed as required by law.

42.    On or about January 11, 2010 and continuing thereafter, the City, through its Department of Code Compliance, issued several citations for violations of WHMC §19.30.030(P), Property Maintenance Standards, and WHMC §7.24.010, Standards for Vacant, Abandoned or Undeveloped Property.  These violations were issued notwithstanding that the Crescent Heights property was never abandoned or vacant.  The violations were issued against Kihagi, Crescent, Aquat and Jambax.

43.    The City singled out Plaintiffs for enforcement of a variety alleged code violations in an arbitrary, capricious and vindictive manner.  The City was motivated by a personal hostility and strong arm tactics towards Plaintiffs arising from the exercise of their rights under the Ellis Act which conflicted with the City's objective and goal to weaken the Ellis Act.  One way to weaken the Ellis Act is applying its power to discourage anyone from exercising it by constantly harassing and frustrating that person or entity with silly code violations and bombarding her with criminal and civil proceedings.  By making Plaintiffs examples, the City will achieve its objective in discouraging others from invoking the Ellis Act.  The City has achieved its objective by discouraging Plaintiffs exercising their rights under the Ellis Act in connection with other apartment buildings owned and managed by Plaintiffs.

44.    West Hollywood Municipal Code § 19.30.030 (J)(2), for example, makes it a violation to maintain property "with a lack of adequate landscaping or ground cover sufficient to prevent blowing dust or erosion, or allowing the landscaping on private property or in a parkway to cause a hazard or inconvenience to pedestrians using the public sidewalk."

14

FOURTH AMENDED COMPLAINT

45.     Pursuant to this Code section, Plaintiffs have been cited numerous times due to a deviation of about ½ inch between the grass on her property and the top of the sidewalk.  Virtually all the other properties on her block and on adjoining streets have this condition, with many of the properties having much greater deviations.  Notwithstanding that deviations of this type are the general rule rather than the exception throughout West Hollywood, Plaintiffs and Plaintiffs alone have been singled out for enforcement with citations alleging that the condition constitutes a "tripping hazard."

46.     Plaintiffs are informed and believe that they are the only persons within the City of West Hollywood that has received a "tripping hazard" citation based on the general conditions that formed the basis for the tripping hazard violations issued to Plaintiffs.  The issuance of tripping hazard citations was motivated by a personal animus towards Plaintiffs motivated by their decisions to avail themselves of her rights under the Ellis Act.

47.     WHMC §19.30.030(P) makes it a code violation when "A violation of any other provision of the Municipal Code or the Building Code that pertains to real property, structures, or which otherwise concerns the public health, safety, and general welfare."

48.     WHMC §7.24.010 applies only to vacant, abandoned or underdeveloped property, and does not apply to property that is undergoing renovation or rehabilitation.

49.     Municipal Code § 7.24.010 provides that in the case of vacant or abandoned buildings, the owner shall maintain such property in "good condition, keeping it cleaned, watered and weeded.  Dead or dying plant material shall be removed."  Crescent and Kihagi received a notice of violation on the grounds that there existed a brown spot on the corner of her lawn at the Crescent Heights property.  Similar properties on the street or of the same conditions as of the Orange

15

FOURTH AMENDED COMPLAINT

Grove, Crescent or Formosa property had lawns that were completely un-watered with dead grass.  Moreover, properties throughout the City have front yards consisting totally of dead grass and dirt, but are not cited.  Plaintiffs allege that the issuance of the "dry spot on the lawn" citation was issued based on a personal animus towards Plaintiffs and was arbitrary and capricious.

50.    Plaintiffs allege they are the only persons in the history of the City that have received a citation for the type of condition that existed on their properties and that they were singled out and targeted due to a personal animus towards them motivated in part by the City's opposition to the Ellis Act and in retribution for Plaintiffs availing themselves of their rights under the Ellis Act.

51.    All work was completed at North Crescent Heights in early 2012.  In or about August 2011, the City commenced criminal proceedings (People v. Kihagi, LASC Case No. MC 1BV01333) against Plaintiffs for a number of citations that were issued in prior years but never resolved, many of which are described above.

52.    The citation based on trash accumulating in the back yard, a citation which later became the subject of a criminal action, was based on construction materials being stacked in a paved area for the trash cans are designed to be placed. The area is not visible from the street.  The City does not issue citations for the condition on Plaintiff's property and would not have issued the trash accumulation citation but for its animus towards Plaintiffs and the City's visceral opposition to the Ellis Act and persons who avail themselves of their privileges under the Act.

53.    To resolve the alleged criminal citations based on Code violations, the City and the Plaintiffs entered into a deferred prosecution agreement to resolve the criminal citations.  The term of the agreement was 18 months and would expire on November 12, 2013.  All charges were ultimately dismissed against Plaintiffs.

54.    Just prior to the expiration of the deferred prosecution agreement, the City made an ex parte application to the Court in an attempt to revoke the

16

FOURTH AMENDED COMPLAINT

agreement.  The City alleged that the Plaintiffs were either engaging in unpermitted construction at other properties, or that the properties were being maintained in violation of the property maintenance code.

55.     The Court denied the City's application for ex parte relief.  The Court further found that Plaintiffs had not violated the deferred prosecution agreement. The City petitioned the Superior Court to find Plaintiffs were violation of the deferred prosecution agreement in bad faith and without cause.

56.     Meanwhile, on May 16, 2012 the City filed a motion to enforce settlement pursuant to the settlement agreement reached in January 9 of 2011 claiming that Kihagi, Crescent and Aquat re-rented certain units and thereby violating the settlement agreement.  The City learned of Plaintiffs re-renting the units by actively search through rental websites for advertising showing units for rent even though more than three years have passed since the property was taken off the rental market.  It is important to note that the Ellis Act prohibited the city from enforcing contractual Ellis Act waivers in all circumstances except those specified in the statute.  *Embassy LLC v. City of Santa Monica*, 185 Cal.App.4[th] 771, 776 (2010).  The City claimed that Kihagi, Crescent and Aquat entered into an agreement whereby she had agreed not to re-rent any units for the next 10 years. The waiver argument is not only impermissible under the Ellis Act, but the judgment obtained was reversed on appeal on January 7, 2014.

57.     In or about July 2012, an attorney representing the City, Regan, approached tenants at the Crescent Heights building, Diana Dominguez and Logan Yuzna, and told the tenants that they could obtain a rent reduction if they made a complaint.  In fact, there were no grounds for the tenants to receive a rent reduction and Regan was aware of the fact there was no MAR for the unit as of the date of the July 17, 2008 notice of intent to withdraw.  After the complaint was filed, an internal hearing was scheduled and the complaining tenants recruited by Regan

failed to show up, as did Regan herself who showed up at the first hearing.  The Administrative Law Judge presiding at the hearing dismissed the complaint and stated on the record that: "No one would have believed testimony of the tenants that they were tenants."

58.    The actions taken by the attorney for the City, Regan, were done with the knowledge and ratification of the City to further the City's primary goal to weaken the Ellis Act and motivated by a personal animus towards Plaintiffs and were malicious.  Not only was it carried out maliciously, it was done in complete disregard for Plaintiffs right to be treated equally.  As a result of the City's and Regan's misconduct, Plaintiffs were deprived of their constitutional rights and incurred attorney fees and other damages in defending numerous claims and suits against her.

59.    On or about July 18, 2013, the City approved a building permit application for 1231 N. Vista, a property in which is owned by Jambax with Kihagi the managing member.  The approved building permit allowed for minor improvements to the bathrooms and kitchen, replacement of the front door, replacement of closet doors and replacement of water heater enclosure.

60.    On or about July 31, 2013, the property was inspected by Code Compliance Officer Jeffrey Jones.  During his inspection, Mr. Jones alleged that he observed a property maintenance code violation at the 1231 N. Vista property.  Mr. Jones alleged that the N. Vista property's parkway contained a tripping hazard, as well as lack of landscaping and overgrown and dead vegetation all in violation of WHMC property maintenance requirements. He sent a warning notice to Jambax and Kihagi concerning these alleged code violations.

61.    This warning was issued notwithstanding that the same tripping hazards existed at the property that was adjacent to 1231 N. Vista in addition to many, many other properties in the City.

18

FOURTH AMENDED COMPLAINT

62.    On or about August 13, 2013, Mr. Jones returned to the N. Vista property at 7:34 a.m. and observed that no corrective action had been taken concerning the tripping hazard on the parkway, nor with the removal of the vegetation and plant material.  On or about August 14, 2013, Mr. Jones issued a notice of violation to Plaintiffs concerning the alleged tripping hazard.

63.    There are close to fifty other buildings that Jones could have investigated, but he deliberately went straight to another real property managed by Aquat 009, LLC in which Kihagi is a managing director located at 1220 Formosa and got there by *7:40 a.m.* and issued another notice of violation on August 15, 2013 for a "tripping hazard" on the parkway, and for failure to properly landscape the property.  The condition for which the tripping hazard was issued is common to all properties throughout the City and Plaintiffs were arbitrarily singled out for enforcement.  Mr. Jones indicated to Kihagi that he had been aware of the landscaping during the time owned by previous property owner.  The City never writes tripping hazard citations based on the condition that existed on the property.  In fact, the no reasonable person would ever characterize the condition as constituting a tripping hazard.  Mr. Jones issued the tripping hazard citations based on his personal animus towards Plaintiffs stemming initially from his personal opposition to Ellis Act conversions and deliberately targeted Plaintiffs for exercising that right.  On information and belief, Mr. Jones has never cited another property for maintenance of a tripping hazard based a condition similar to the condition that existed on 1220 North Formosa even though similar conditions are common throughout the City.

64.    Properties that are adjacent to 1220 N. Formosa, for example, have conditions similar to the condition that Mr. Jones alleged a tripping hazard but have never been cited.  The nature of the landscaping violations and trip hazards was that the soil level had to be raised about ¼ inch to the same level as the concrete

19

walkway.  By deliberately issuing citations to Plaintiffs and no one else, Jones' conduct deprived Plaintiffs of their rights under the fourteenth amendment.

65.    Defendant and City Official, Code Compliance Officer, Jeffery Jones is responsible for writing citations alleging the tripping conditions complained of herein.  The conditions on the properties that led to the so-called tripping violations were the same conditions that existed on virtually all other properties on the same streets.  The relevant section of the Municipal Code that was violated prohibits unsafe conditions and makes no mention of deviations between the grass line and surrounding cement.  Given the condition on the properties for which the citations were issued, no reasonable person could conclude that a public safety hazard existed.  The numerous trip violation citations concern conditions common in the neighbourhood yet no other persons have been cited for this condition.

66.    On another occasion in the summer of 2013, Mr. Jones and another inspector, Phillip Brandenburg, inspected 1237 N. Orange, a property that is owned by Jambax and Kihagi is the managing director.  They inspected the interior stairs and hand railings to determine if these items were of the proper size.  They also inspected a small set of stairs leading to the parking lot. The exterior rear staircase measures 10 feet by 5 feet.  The inspectors individually measured 15 steps to determine if each step, which was required by WHMC to be 7 inches high and 11 inches wide, was in compliance.  Two of the stairs did not meet these requirements, and were promptly repaired.  They then measured each rail, of which there were over 100, to determine if each rail was 4 inches apart.  Four rails did not meet this requirement.  These were promptly repaired.   Plaintiffs attempted at least four times to set up an appointment from August 2013 to September 2013 to have the property re-inspected, neither Mr. Jones nor Mr. Brandenburg showed up at the appointed time.

FOURTH AMENDED COMPLAINT

67.     After September 2013, Kihagi again made multiple requests for inspections that mostly have been ignore.  She again contacted the City and was told that there would be an inspection on September 13, 2013.  The night before, she flew into town, just for the inspection.  The inspector did not come and she then personally contacted Brandenberg, who informed her that he would not respond to her request, and that she should have been informed by Jones that there were multiple parties to coordinate for inspection; and that any such inspection would not occur until all were able to coordinate scheduling.

68.     Indeed, the City has time and again cancelled or missed appointment to approve improvements to Plaintiffs' properties so that the inspection could not be completed within the window of time where Plaintiffs must be in compliance and pursuant to the agreement she'd entered into at the time of her plea in the criminal case No. 1BV01333.  Using the fact that there was no final permit issued, the City sought to have Kihagi found not to be in compliance and dragged her back to court for sentencing.  However, the court found that Kihagi was doing exactly what she was supposed to be doing and dismissed all charges against her.  These cancelled and missed appointments were motivated by an animus towards Plaintiffs and an intention by the City to make doing business with the City as difficult as possible.  Plaintiffs have suffered substantial injury as a result of the City's intentional delays in the form of lost income, emotional distress, increased expenses, additional financing expenses and other economic damages.  Plaintiffs now fear invoking the Ellis Act due to the City's constant harassment and strong arm tactics.

69.     Defendant and City Official Phillip Brandenburg time and again deliberately delayed and failed to appear for inspections of construction work inspection appointments without any basis.  Brandenburg's deliberate indifference to Plaintiffs' rights to equal protection caused them to be dragged back into court.  The delays have caused increased construction costs and longer vacancy periods.

FOURTH AMENDED COMPLAINT

On information and belief, these delays and missed appointments are motivated by a personal hostility towards Plaintiffs who are being singled out for disparate treatment. The delays have caused economic injury in the form of increased construction costs and delays in being able to rent Plaintiffs' properties.

70. The alleged stair and stair rail violations that existed on Plaintiffs' 1237 North Orange property were *de minimus* and technical. Violations such as the ones alleged against are never enforced against other property owners in the City. Plaintiffs allege that the only reason that she was cited for the stair and stair rail violations are that Mr. Jones and Mr. Brandenburg have a personal animus towards Plaintiffs stemming from their hostility to Ellis Act conversions and their prior dealings with Plaintiffs. Their repeated individual acts under the color of state law of specifically looking for any kinds of de minimus violations to write Plaintiffs up and not schedule and/or cancel a final inspection because Kihagi was near the end of her probation term were deliberately indifferent to the mandates of the Fourteenth Amendment and calculated to deprive Kihagi of her rights to be treated equally. Mr. Jones and Mr. Brandenburg would not have cited any other similarly situated person or property for these violations. They would not have cited Plaintiffs if it were not for the personal animus towards Plaintiffs and the vendetta carried out by Brandenberg and other City employees.

71. The requirement that permits be obtained for work on dwellings has been unevenly enforced against Plaintiffs. Jeffrey Jones has issued citations for work without a permit while at the same time not requiring permits for work on adjacent properties. In one case, a worker was taking down outdoor fixtures providing shade to windows. Plaintiffs witnessed similar work on an adjacent property and the City has not required a construction permit. This type work is routinely considered de minimus by the City and no permits are required. Plaintiffs allege on information and belief that Jones and the City have a vendetta against

22

Plaintiffs and have enforced the permit requirement in an arbitrary and disparate manner.

72.    At the first sentencing hearing on revocation of the deferred sentencing agreement in the fall of 2013, the Defendant attempted to use the incidents described above as a basis for revocation of the agreement and to have the Kihagi sentenced for violating the deferred sentencing agreement.

73.    The state court rejected the City's argument and found that the nature of the work and the type of workers that needed to be involved showed that Plaintiffs' efforts were diligent and reasonable.  The City's attempt to revoke the deferred sentencing agreement was motivated by discrimination based on race and gender and a personal animus towards Plaintiffs.  The City's actions were malicious, arbitrary and capricious.

74.    Moreover, at the hearing initiated by the City to revoke the deferred sentencing agreement, the Court found against the City.  The state court found that the Kihagi's efforts were diligent and reasonable and rejected the City's position that Kihagi should be jailed.  The Court found that the Plaintiffs had complied with the Building Code by obtaining the proper building permits, thus vindicating the Plaintiffs' position.  The City acted maliciously and without probable cause in initiating the hearing where they sought to revoke the deferred sentencing agreement.  The state court further found that the City acted unreasonably in failing to show up for appointments to approve work that had been performed.  Plaintiffs allege that the City has a practice and pattern of delaying construction on Plaintiffs' properties solely due to personal animus vindictiveness towards Plaintiff.

75.    In another matter, *City of West Hollywood v. Anna Kihagi* (*City v. Kihagi I*), Los Angeles Superior Court Case No. SC100932, the City filed a civil action against Kihagi, Aquat and Crescent.  Unable to prove its case, the City and Plaintiffs entered into a settlement agreement whereby Plaintiffs would pay nothing,

23

provided there were no further Ellis Act violations.  If any further violations did occur, Plaintiffs would pay $10,000.  The trial court retained jurisdiction to enforce the settlement.  In 2012, the City sought to find Plaintiffs in violation of the Ellis Act and to find them in violation of the settlement agreement.  On appeal, the Court of Appeal found that the City's proffered interpretation of the settlement agreement and the Ellis Act was patently unreasonable and reversed, holding that the City had not presented any evidence the Plaintiffs violated the Ellis Act and that its construction of the Ellis Act and settlement agreement was unreasonable.

76.    The decision to pursue a violation of the settlement agreement by taking a patently unreasonable position was made by Alison Regan acting with final decision authority to prosecute this action in the name of the City.

77.    The prosecution of Case No. SC100932 was vindictive and discriminatory from the outset.  The underlying alleged violations were without merit and never would have been prosecuted if it were not for the City's animus towards Plaintiffs and the City's determination to retaliate against Plaintiffs for exercising their rights under the Ellis Act, thereby achieving its primary goal to deter other from exercising such rights and effectively weaken the Ellis Act.

78.    As other evidence of the City maliciously singling out Plaintiffs are the events in the hearings associated with *People v. Kihagi*, Case No. 1BV01333. Plaintiffs prevailed in this action and did not suffer criminal conviction convictions. In that case, the City alleged as criminal various code violations regarding the upkeep of Kihagi's properties.  The code violations alleged against Plaintiffs involved conditions on their property that were common to all properties in the neighbourhood although no other property owners received code citations, much less criminal prosecution.  The code violations that morphed into criminal prosecution included the following:

FOURTH AMENDED COMPLAINT

a. Violation of Municipal Code § 7.24.010 provides the owner shall maintain such property in "good condition, keeping it cleaned, watered and weeded. Dead or dying plant material shall be removed." Plaintiffs received a violation for having a brown spot on their lawn when other properties on the street had completely dry grass;

b. Municipal Code § 19.30.030 (J)(2) makes it a violation to maintain property "with a lack of adequate landscaping or ground cover sufficient to prevent blowing dust or erosion, or allowing the landscaping on private property or in a parkway to cause a hazard or inconvenience to pedestrians using the public sidewalk." Pursuant to this section, Plaintiff was charged with having a lawn with about a ¼ deviation from the sidewalk. Plaintiff received a violation became the subject of criminal prosecution although literally all other properties in the neighborhood have deviations between the level of the grass and sidewalk exceeding ¼ inch and have never received a citation. The prosecution for this offense was vindictive, selective and made in retribution for Plaintiffs exercising their rights under the Ellis Act.

c. Municipal Code § 7.24.010(e) requires property owners to "[s]ecure, lock and close all buildings and structures upon the property, place or area in accordance with presently applicable FHA-standards, subject to the approval of the Building Official. Pursuant to this section, Plaintiff was criminally prosecuted for a violation that a window on the Crescent Heights property was left open ¼ inch, despite the fact that the ordinance applies to

25

vacant buildings and Plaintiff's property was not vacant. Moreover, application to this ordinance to a window open ¼ inch is arbitrary and capricious and makes no sense. Plaintiffs were singled out for prosecution due to personal animus towards Plaintiffs and as retribution for exercising their rights under the Ellis Act.

d. Municipal Code § 7.24.010(c) requires the owner of a vacant building to "[s]ubmit a "Letter of Agency" to the West Hollywood Sheriff's Station every thirty days and post "No Trespassing" signs as required so that members of the Sheriff's Department are empowered to remove all unauthorized persons from the property. The "letter of agency" is a letter informing the Sheriff's Department of the person responsible for the property. The statute is arbitrary and designed to harass Ellis Act properties to the extent that it requires a new letter every 30 days even if there has been no change in the responsible party. Plaintiff was subject to criminal prosecution for violation of the ordinance. The prosecution was selective in the sense that no other person in the history of the City has been criminally prosecuted for violating this provision of the ordinance.

e. The City also sought to further prosecute Plaintiffs for a myriad of other technical violations in a selective and vindictive manner motivated by a personal animus towards Plaintiffs and in retaliation for exercising their rights under the Ellis Act.

f. In this criminal prosecution, Plaintiff entered into an agreement that the allegations would not be pursued provide no further violations occurred, provided that the City first give notice of

26

FOURTH AMENDED COMPLAINT

any alleged violations and an opportunity to cure. The City unsuccessfully sought to pursue the prosecution and sentencing on the initial allegations based on code violations that occurred after the criminal prosecution was initiated. The state court judge rejected the City's attempt to use the subsequent violations to trigger prosecution of the initial violations on the grounds that the City had not provided notice to Plaintiff's attorney in the criminal case. The failure to provide Plaintiff's attorney notice and opportunity to cure the subsequent violations was calculated and intended to deprive Plaintiff the opportunity to cure the alleged subsequent violations.

79.    The misconduct complained of herein is ongoing. In another civil action, *Sheehe v. Kihagi*, Case SC 119079 ("the *Sheehe* action"), the City incited a former tenant to bring a meritless action against Kihagi, Crescent and Aquat on November 15, 2012, and then the City intervened on March 19, 2013 to advocate patently unreasonable and unlawful positions against Plaintiffs. On June 6, 2013, nearly four years after the property was withdrawn, the City obtained a preliminary injunction to bar Kihagi, Crescent and Aquat from re-renting four units at the property located at 1263 N. Crescent Heights even though the Ellis Act does not provide for injunctive relief against Kihagi. To circumvent the Ellis Act, the City invoked WHMC §17.068.010(f).

80.    Even after the Court of Appeal has reversed the judgment earlier obtained in the matter of Kihagi I, the City refused to have the preliminary injunction dissolved forcing Kihagi to file a motion to dissolve the injunction. The City's unlawful conduct is motivated by a personal animus towards Plaintiff and hostility towards the Ellis Act. The City's conduct in the *Sheehe* matter is ongoing and continuing. Plaintiff

27

81.      Undeterred by the Court of Appeal's decision, Regan brought a contempt hearing claiming that Kihagi, Aquat and Crescent violated the preliminary injunctive order.   Regan's hatred and personal animosity toward Plaintiffs was so great that in the civil contempt proceeding, she sought to place Kihagi in jail for five days.  These Plaintiffs filed a notice of appeal on October 1, 2014 after her motion to dissolve the injunction was denied.  While the perfecting of an appeal stayed the execution of the injunctive order, Regan refused to stay the contempt hearing and again forced Plaintiffs to seek a writ of supersedeas.

82.      In *Sheehe*, after the City failed to coerce Plaintiffs into a new settlement that would provide for one low income unit, the City located a former tenant and encouraged and urged that he file within weeks a meritless action against Plaintiff for failing to offer to re-rent a unit formerly occupied by him.  The tenant's lawsuit was encouraged and directed by Allison Regan and the City, even though it is without merit.  It is on the third amended complaint, which was the subject of a demurrer because the action is barred by the statute of limitations.  However, all proceedings in the trial court are stayed pending appeal.

83.      The City's vindictive actions in the *Sheehe* action were all orchestrated by Regan acting in the name of the City with final decision making authority.

84.      After encouraging and directing Sheehe to file a meritless action, the City under the direction of Allison Regan intervened in the lawsuit and sought to expand the its scope.  Regan and the City orchestrated the *Sheehe* action by soliciting Sheehe and all along planned to expand the scope of the lawsuit to pursue the position that the court of appeal rejected in *City v. Kihagi I*.  In *Sheehe*, the City took the same "absurd" position that was earlier rejected by the court of appeal.  When the trial court issued an ambiguous oral ruling, the City, in bad faith, submitted to the trial court a Notice of Ruling that enjoined Crescent and Kihagi from renting or leasing certain units unless first complying with the Ellis Act by

FOURTH AMENDED COMPLAINT

giving the former tenants the rights of first refusal and offering the same MAR as of 2008.  These were the same units that the court of appeal earlier found were outside the scope of the Ellis Act restrictions because no rental had occurred.

85.    In the *Sheehe* action, the City attempted to place Ellis Act rent control restrictions on units even though the court of appeal squarely held that the specific units were not subject to the Ellis Act rent control restrictions, specifically that Kihagi must offer the units at the same MAR at the time the property was withdrawn in 2008.  The non-conforming Notice of Ruling is that it sought to bring within the scope of Ellis Act restrictions the same units that were found not to be subject to Ellis Act restrictions in an earlier court of appeal opinion.  The City and Allison Regan are presently prosecuting the Sheehe action premised on the precise same position that was found to be "absurd" in *WH v. Kihagi I*.

86.    In *Sheehe*, Plaintiff was subjected to the prospect of 5 days of jail time in a civil contempt proceedings and forced to incur attorney fees to file an appeal of the intentionally misleading Notice of Ruling and then to seek a stay via a writ of supersedeas and application for temporary stay.   On December 4, 2014, the court of appeal granted the writ and stayed all proceedings in *Sheehe*.  The proceedings in the court of appeal involve the City prosecuting the same position that was found to be "absurd" in *WH v. Kihagi I*.

87.    During this time frame, Regan quietly sought another judgment in the Kihagi I matter that Kihagi only subsequently learned.  Regan clearly took advantage of Kihagi's former counsel withdrawal from the case, which left her, Crescent and Aquat without counsel while they were fighting to have the contempt hearing stayed in the Sheehe matter.  The basis of the second motion for enforcement in that case is the same issue and subject pending in Sheehe, in that Regan claimed that Kihagi re-rented Sheehe's unit in May of 2014 thereby violating the Settlement Agreement.  The City gave no notice to 1263 N. Crescent, LLC and

FOURTH AMENDED COMPLAINT

Aquat 009, LLC but sought to permanently enjoined Kihagi and the LLCs from proceeding with the termination of tenancies at 1263-1267 1/2 N. Crescent Heights Blvd. under the Notice to the City of Intent to Withdraw Rental Units from the Market filed with the City of West Hollywood on July 17, 2008.

88.    In People v. Kihagi, Case No. 4WA32199, the City recently filed criminal charged against Kihagi in violation of West Hollywood Municipal Code § 17.52.090.  Section 17.52.090 makes it a criminal offense to have "caused, permitted, aided, abetted, or suffered the harassment of a tenant in a manner that was likely to create a hostile living environment or cause a reasonable tenant similarly situated to vacate the rental housing unit."  There is no allegation that a tenant vacated a unit due to any unlawful acts of Plaintiff and the statute unconstitutional on its face.  First, it is unconstitutionally vague in the use of the term "harassment . . . likely to create a hostile living environment."  *Baba v. Board of Sup'rs of San Francisco*, 124 Cal. App. 4th 504, 506 (Statute making a criminal offense to threaten to evict of recover possession in connection with Ellis Act conversion held unconstitutional).  In *Baba*, the California Court of Appeal held that an ordinance substantially similar to § 17.52.090 is unconstitutional on its face.  It makes criminal it a criminal offense to have "permitted . . . conditions likely to create a hostile living condition."  Second, the statute impermissibly makes unlawful speech protected by the First Amendment.  The prosecution of this criminal action was done at the direction of defendant Allison Regan maliciously and motivated by a personal animus towards Kihagi.

89.    On about January 6, 2015, the Court in *People v. Kihagi*, Case No. Case No. 4WA32199, granted Kihagi's motion to dismiss on the grounds that to § 17.52.090 is facially unconstitutionally because the ordinance is unconstitutionally vague and also makes criminal speech protected by the First Amendment.

90.     The complaint in *People v. Kihagi*, Case No. 4WA32199, which was filed on August 19, 2014 alleging four violations of West Hollywood Municipal Code Section 17.28.010(b), failure to register rental units after a vacancy and amended on September 17, 2014 to add two additional violations. These charges were filed even though Kihagi had timely provided the City Attorney with all the required registration information. Kihagi was singled out for enforcement and was factually innocent of the charges. After the Court dismissed the criminal charges related to tenant harassment, the People voluntarily dismissed the § 17.28.010 (b) charges, barring any further prosecution for the alleged offenses. The charges alleging violations of the registration requirements against Kihagi were the result of her being singled out and discriminated against due to the City's policy to eliminate or weaken the Ellis Act by punishing Kihagi for exercising her rights. The charges were brought at the urging of Regan and other City officials acting in their investigative rather than prosecutorial capacity. The West Hollywood City Attorney was not the office assigned to prosecute the criminal charges brought in *People v. Kihagi* and had no role other than in an investigative capacity.

91.     In connection with the prosecution of the criminal action in Case No. 4WA32199, Regan took on a role outside that of a prosecutor. She interviewed and solicited witness testimony and assisted in the preparation of investigative reports to submit to the attorneys responsible for prosecuting the case, an outside law firm. Regan played no role as a prosecutor in this criminal action, but rather as the individual who headed up the investigations and urged the actual prosecutors to file charges.

92.     On information and belief, Regan, either directly or indirectly through others, solicited tenants and encouraged them to embellish or fabricate stories to the effect that Plaintiff created a "hostile living condition" for the purpose of bringing

31

FOURTH AMENDED COMPLAINT

criminal charges.  This criminal case was orchestrated by Regan who encouraged and persuaded witnesses to give embellished and misleading statements.

93.     The City, Michael Jenkins, and Allison Regan have recently initiated yet another civil proceeding in August of 2014 to collect fines and assessments in connection with the citations complained of herein.  Many of the citations were six years old and the notices of fine were given in 2004.  The action is styled *City of West Hollywood v. Kihagi*, Case No. SC122915.  The complaint names all Plaintiffs as defendants.  The liability for many of these citations was resolved in an earlier settlement of a civil action.  This latest civil action is brought maliciously and without cause to believe that Plaintiff is responsible for payment.  Furthermore, the liability on the citations is barred by the statute of limitations.  Lastly, the fines associated with the citations are collectible only against the property and not Kihagi as Kihagi does not own any of the properties in question.  This civil action is brought maliciously and without cause and the City and Regan know it.

## COUNT I

## (Violation of Equal Protection, 42 USC § 1983)

## (Against All Defendants)

94.     Plaintiffs incorporates by reference all the preceding paragraphs as full set forth herein.

95.     Plaintiffs allege that the Defendants have enforced building codes and other relevant laws in an arbitrary, capricious and discriminatory manner as more specifically alleged herein.  The Defendants have enforced the City's laws in a uniquely discriminatory fashion against Plaintiffs motivated by a personal animus towards Plaintiffs and the fact that she is of African descent and in part by a bureaucratic hostility towards the Ellis Act.  By bombarding Plaintiffs with criminal

and civil lawsuits and administrative hearings and citations, Defendants have achieved its primary objective of weakening the Ellis Act because no other landlords would exercise it or other landlords would think twice before exercising it. The Defendants have effectively discouraged Plaintiffs from exercising their rights under the Ellis Act in connection with another building.

96.    As a result of the City's unequal enforcement of its laws and personal vendetta, Plaintiffs have been suffered damages in delay in completing their Ellis Act conversion, incurring attorney fees and having habitable structures held off the market. She has also incurred attorney fees in defending criminal proceeding initiated maliciously and suffered extreme emotional distress.

97.    Defendants have also selectively prosecuted civil and criminal actions as more fully above. The ordinances that Defendants seek to enforce are unconstitutionally vague on their face. Plaintiffs have targeted for disparate treatment in that similarly situated persons are not prosecuted or cited for the violations and charges described above based on the conduct alleged against Plaintiffs.

FOURTH AMENDED COMPLAINT

## RELIEF SOUGHT AS TO ALL COUNTS

WHEREFORE, Plaintiffs prays that the Court award the following relief:

1. For an award of attorney fees pursuant to 42 USC § 1983 and any other applicable law;
2. For general and special damages according to proof;
3. For punitive damages against  the City officials sufficient to deter the unlawful conduct alleged herein;
4. For costs of suit herein; and
5. For such other relief as the Court deems proper

Dated: January 4, 2016

NT LAW GROUP

/s/ Julie N. Nong

_____

Julie N. Nong

Attorney for plaintiffs

34

DEMAND FOR JURY TRIAL


Plaintiff hereby demands a trial by jury.

Dated: January 4, 2016



NT LAW GROUP

/s/ Julie N. Nong

_____

Julie N. Nong

Attorney for plaintiff

1